**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2514-22

IN THE MATTER OF
TYRELL BAGBY,
CAMDEN COUNTY
POLICE DEPARTMENT.

_____

Argued January 23, 2024 – Decided April 18, 2024

Before Judges Sumners and Rose.

On appeal from the New Jersey Civil Service Commission, Docket No. 2022-207.

Peter Henry Demkovitz argued cause for appellant Tyrell Bagby (Markowitz and Richman, attorneys; Matthew D. Areman and Peter Henry Demkovitz, on the briefs).

Andrew S. Brown argued the cause for respondent Camden County Police Department (Brown & Connery, LLP, attorneys; Michael Joseph DiPiero and Andrew S. Brown, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Adam William Marshall, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Tyrell Bagby, a former sergeant with the Camden County Police Department, appeals from a March 15, 2023 final Civil Service Commission decision upholding his termination. The Commission accepted and adopted the factual findings and legal conclusions of an administrative law judge (ALJ), who recommended a suspension and demotion in rank. Citing the ALJ's factual findings, the Commission found progressive discipline was not appropriate in view of the seriousness of the offense, despite Bagby's unblemished disciplinary record. Because we conclude Bagby failed to demonstrate the Commission's final decision was arbitrary, capricious, or unreasonable, see In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008), we affirm.

I.

The facts underpinning Bagby's removal are not disputed. Hired by the Department in April 2013, Bagby was promoted to sergeant in June 2019. As sergeant, Bagby was assigned to supervise the Patrol Division's morning shift, 5:00 a.m. to 5:00 p.m.

On December 22, 2020, Bagby was notified that his wife's stepfather died unexpectedly. Pursuant to the governing collective bargaining agreement, Bagby was entitled to request up to seven days' bereavement leave. To request

leave, officers were required to complete and submit to their immediate supervisors a Time Off Leave Request Form for approval. Bagby failed to follow this mandate.

Instead, on Wednesday, December 23, around 9:38 a.m., Bagby, who had reported for duty, texted his immediate supervisor, Lieutenant William Martin, and requested bereavement leave. More specifically, the text message stated: "God [sic] morning LT, just advising today/tomorrow, I will be working until 11am and utilizing bereavement. Monday, I'll be off the entire day for Bereavement." Martin, who was attending a meeting when Bagby sent the text, did not have an opportunity to read and respond to the message. When Bagby left his shift, he contacted "Watch Commander"[1] Lieutenant Lawrence Cox, regarding his bereavement request. However, Cox had no control over staffing.

Unaware of Bagby's request for leave, at some point that same morning, Martin contacted Bagby to schedule a 12:30 p.m. virtual meeting with another lieutenant and the captain "to discuss some performance issues." After their ensuing phone conversation that same day, Martin believed Bagby would work from 5:00 a.m. to 11:00 a.m. the following day. Accordingly, "minimum

---

[1]  As the supervisor of the Real-Time Operations Center, the watch commander neither approves leave requests nor schedules replacement officers.

3

staffing would be covered . . . until 11[:00 a.m.] when the other sergeants [reported for duty]."

However, on December 24, Bagby elected to take a full day's bereavement, without notice or supervisor approval, knowing the other shift sergeant was scheduled to be off that day. Bagby conducted roll call as though he had reported to work and spoke with Sergeant Migdalia Sanchez, who had completed her shift.[2] Forty-eight minutes after his shift began, Bagby sent a text message to Cox stating:

> Good morning LT. Morning and Transitional Lineups have been sent. All areas are covered including response units.
>
> My wife is really overwhelmed with the funeral arrangements for her father, especially during the holidays. So I'm on bereavement leave for this entire day.
>
> All officers have the lineups as well.

Within minutes, Cox texted Bagby and asked whether Martin was aware of his change in time off. Bagby sent two text messages in succession. He first texted Martin: "Good morning LT. I'm utilizing Bereavement for today. Watch

---

[2] In view of then-pandemic protocols, roll call was conducted telephonically.

Commander (LT. Cox) already noticed. Morning/Transitional Lineups all completed and sent." Bagby then texted Cox: "Yes, sir, I sent him a message."

In a text message to Martin and another superior, Cox stated: "Are either of you aware there is no [sergeant on duty] this morning. Bagby was supposed to be here. He had a phone roll call with his people so [Sanchez] thought he was in and left. So I now have no [sergeant] until 10:00 [a.m.]. Bagby is taking bereavement today." Martin explained he was seeking coverage. Sanchez was ordered to return to duty to cover Bagby's shift.

During the ensuing internal affairs (IA) investigation, Bagby "did not provide true and accurate answers as required by the Candor [S]tatement." By the third of three interviews, investigators finally "g[ot] the full accurate picture." As some notable examples, Bagby: absented his command without supervisor coverage; was not truthful about the time he emailed the "lineup" sheet; failed to inform Martin directly and pursuant to the proper procedure that he was taking bereavement leave; and failed to advise Sanchez that he was not working after her shift ended, causing her to work on her scheduled off day. Bagby also provided various timelines regarding his decision not to report to work. The IA investigators thus concluded Bagby's conduct reflected an attempt

A-2514-22

to "make it look as if he was coming into work or was on the clock and not there."

Thereafter, the Department issued a preliminary notice of disciplinary action, suspending Bagby and charging him with incompetency, inefficiency or failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1); inability to perform duties, N.J.A.C. 4A:2-2.3(a)(3); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12). Bagby also was charged with violating various departmental rules and regulations. A Final Notice of Disciplinary Action followed, immediately terminating Bagby's employment.

Following a departmental hearing, the charges and disposition were sustained. Bagby filed an administrative appeal and the matter was transmitted to the Office of Administrative Law as a contested case. During the one-day testimonial hearing before the ALJ, the Department called Curtis May, a sergeant assigned to the IA Unit, who testified consistently with the facts summarized above. The Department moved into evidence various documents, including the text messages quoted above.

6

Bagby testified on his own behalf and presented no other evidence. In response to inquiry by the ALJ, Bagby acknowledged he was not completely truthful during his IA interviews. Bagby testified, in pertinent part:

> I understand that I should have told IA everything but – even though I personally thought I didn't want to go into a full . . . personal things with myself and my wife obviously not to get any of us jammed up, but . . . I do understand that . . . I should have handled this 100 percent the way that it should have [been handled] and not the route . . . that I took.

Following written summations, the ALJ issued an initial decision, crediting May's testimony and finding "Bagby's testimony was not credible at all." The ALJ concluded:

> Today, there is an unfortunate societal view of police and policing in general. Also unfortunate is that Bagby had no concern for that, nor his fellow officers and the citizens of Camden who deserve better. The public image of a police sergeant that abuses the system and then lies about it would significantly diminish any modicum of honor and integrity within the . . . Department in their eyes. We cannot have that. Based on his testimony, it's clear that Bagby fails to grasp the gravity of his actions and the potential effect that it could have had. Rightfully, the [Department] seeks to terminate [Bagby]. It is unconscionable to think how the public would react to a supervising officer continually passing a mistruth so that he did not get "jammed up" on an issue of time off. What would Bagby do in a situation that is more severe? There has to be a consequence to individuals['] actions in this world so that it doesn't happen again and more

7

importantly, does not send a message to other officers
that this behavior is tolerated.

The ALJ sustained all violations of the Department's rules and regulations and the administrative charges, except inability to perform duties. However, after balancing Bagby's "lack of disciplinary record, the nature of the job duties, and the nature of the charges," the ALJ modified the Department's disciplinary action and ordered a thirty-day suspension and demotion from sergeant to patrol officer.

Neither party filed exceptions to the ALJ's initial decision. In its final decision that followed, the Commission agreed with the ALJ's factual assessment including that Bagby's "misconduct 'risked the lives of fellow officers and citizens' and was 'inexcusable' and 'intolerable.'" Citing seminal decisions issued by our Supreme Court, the Commission acknowledged it considers progressive discipline "when appropriate," see West New York v. Bock, 38 N.J. 500 (1962), but "where the underlying conduct is of an egregious nature, the imposition of a penalty up to and including removal is appropriate, regardless of an individual's disciplinary history[, s]ee Henry v. Rahway State Prison, 81 N.J. 571 (1980)."

The Commission elaborated:

Even when a law enforcement officer does not possess a prior disciplinary record after many unblemished years of employment, the seriousness of an offense may nevertheless warrant the penalty of removal where it is likely to undermine the public trust. In this regard, the Commission emphasizes that a law enforcement officer is held to a higher standard than a civilian public employee. See Moorestown v. Armstrong, 89 N.J. Super. 560 (App. Div. 1965); see also, In re Phillips, 117 N.J. 567 (1990). This is especially true for supervisory law enforcement personnel.

[(Citation reformatted).]

Acknowledging Bagby's lack of record during his eight-year employment with the Department, the Commission nonetheless was persuaded Bagby's misconduct "[wa]s egregious, especially for a supervisory-level employee, and his continued employment would more than likely undermine the public trust in the . . . Department and law enforcement in general." Because Bagby's conduct "risked the lives of fellow officers and citizens," as the ALJ found, the Commission upheld his removal. The Commission concluded: "That penalty is neither disproportionate to the offenses nor shocking to the conscious."

On appeal, Bagby raises three arguments. Bagby contends the Commission erroneously determined he risked the lives of others when he notified Cox that he was taking bereavement leave; the facts militate against termination; and he failed to provide true and accurate answers during the IA

investigation because the circumstances underlying his bereavement request were "extremely stressful." We are not persuaded.

## II.

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). An agency decision will be upheld "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Virtua-West, 194 N.J. at 422; see also In re Stallworth, 208 N.J. 182, 194 (2011). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

A reviewing court "affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency is dealing with specialized matters within its area of expertise. See Newark, 82 N.J. at 540.

We therefore defer to "[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (alteration in original). We do not substitute our judgment for that of the agency and, if there is any argument supporting the agency action, it must be affirmed. See Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988); see also Stallworth, 208 N.J. at 194-95. "However, we are not bound by the agency's interpretation of a statute or resolution of a question of law." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." In re Herrmann, 192 N.J. 19, 28 (2007). That is because the Commission "is the entity charged with keeping State-government-wide standards of employee performance relatively consistent in disciplinary matters." See id. at 37. As our Supreme Court has made clear, "so long as the discipline . . . falls within a continuum of reasonable outcomes, we must defer, for we have no charge to substitute our judgment for that of the statutorily authorized decisionmaker." In re Hendrickson, 235 N.J. 145, 161 (2018).

Accordingly, "[a] reviewing court should alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into

conformity with its delegated authority. The Court has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.'" Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)). Because appellate courts defer to the agency's decisions, reviewing courts should consider "whether such punishment is 'so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Polk, 90 N.J. at 578 (quoting Pell v. Bd. of Educ., Etc., 34 N.Y.2d 222, 233 (1974)). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." Herrmann, 192 N.J. at 29.

Moreover, because "honesty, integrity, and truthfulness [are] essential traits for a law enforcement officer," the Court has upheld termination where, for example, an officer made conflicting statements to internal affairs investigators about an off-duty altercation. Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 362-63 (2013); see also State v. Gismondi, 353 N.J. Super. 178, 185 (App. Div. 2002) (recognizing "the qualifications required to hold [a law enforcement] position require a high level of honesty, integrity, sensitivity, and fairness in dealing with members of the public").

Applying these principles here, we reject Bagby's argument that the penalty of removal was excessive and unwarranted. We cannot lose sight of Bagby's status as a police officer, who "must present an image of personal integrity and dependability in order to have the respect of the public." In re Carter, 191 N.J. 474, 486 (2007) (quoting Moorestown, 89 N.J. Super. at 566).

We therefore discern no basis to disturb the Commission's decision to remove Bagby from the Department. Following its de novo review, the Commission adopted the ALJ's findings – which were based, in part, on the judge's credibility assessment of the witnesses – and made conclusions of law that were firmly grounded in the governing legal principles, thus warranting our deference. We conclude the Commission's determinations on these issues were "supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D), and were not arbitrary, capricious, or unreasonable.

To the extent not addressed, Bagby's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2514-22