89 N.J. Super. 560 (1965)
215 A.2d 775
TOWNSHIP OF MOORESTOWN, APPELLANT,
v.
RONALD K. ARMSTRONG AND DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1965.
Decided December 23, 1965.
*562 Before Judges SULLIVAN, LEWIS and KOLOVSKY.
Mr. Harry D. Ambrose, Jr., argued the cause for appellant.
Mr. James Logan, Jr., argued the cause for respondent, Ronald K. Armstrong.
The Attorney General representing respondent, Department of Civil Service of the State of New Jersey, filed a statement in lieu of brief.
The opinion of the court was delivered by SULLIVAN, S.J.A.D.
The Township of Moorestown appeals from so much of the decision and final order of the Civil Service Commission as reduced the penalty imposed on Ronald K. Armstrong by the township from removal to suspension for six months without pay.
Armstrong was a patrolman in the police department of the Township of Moorestown, having been appointed March 14, 1961. He served until September 1963, when he was suspended from duty and charged with conduct unbecoming an employee of the public service. The specifications of charges made at that time were as follows:
*563 (1) In that while driving his own personal vehicle with an expired registration and without current inspection, Officer Ronald K. Armstrong became involved in an accident on State Route 38 in the Township of Maple Shade, west of Lenola Road, at approximately 2 A.M., September 21, 1963, and failed to report said accident to the proper authority.
(2) In that on August 12, 1963, the Director of Public Safety did administer a severe reprimand to Officer Armstrong because of insufficient notification of absence due to illness on August 8, failure to report for duty with no notice whatsoever on August 10, and tardiness on August 12, 1963; and furthermore, Officer Armstrong was placed on notice by the Director that additional unbecoming conduct would result in his separation from Township employment.
(3) In that on July 17, 1963, after an altercation with his wife, Officer Armstrong threatened to take his own life with a shotgun, threatened to kill the chief of police, and threatened to abandon his home and job, after a check in payment of rent had been returned from the bank because of insufficient funds.
(4) In that on May 30, 1963, Officer Armstrong did physically abuse his wife and place his family in fear by misuse of firearms, and that because of Officer Armstrong's instability and improper use of firearms, the chief of police did issue orders on May 31, 1963, later confirmed by the Director of Public Safety, that said Officer Armstrong be suspended from duty for five (5) days without pay, and that upon his return Officer Armstrong be limited to desk duty, not be allowed to drive a police car and that all departmental firearms which had been taken from him not be restored until such time as the officer's conduct warranted.
(5) In that on Tuesday, October 23, 1962, Officer Armstrong was placed on report for chronic lateness and non-appearance for duty.
(6) In that the above series of incidents indicates Officer Armstrong's instability and immaturity, and his effectiveness for normal police duty is thereby impaired to such a degree as to make his future employment unadvisable.
The original date for hearing was set for October 3, 1963, but was adjourned at the request of Armstrong's counsel. On November 20, 1963 Armstrong was served with amended specifications which included the six original charges and added an additional four charges as follows:
(7) In that on or about July 12, 1963, Officer Armstrong issued a check in the amount of $5.00 drawn to the order of "Cash," which check was not honored because of the lack of sufficient funds to cover the same when presented.
(8) In that on or about July 16, 1963, Officer Armstrong issued a check in the amount of $5.00 drawn to the order of "Cash," which *564 check was not honored because of the lack of sufficient funds to cover the same when presented.
(9) In that on or about September 13, 1963, Officer Armstrong issued a check in the amount of $10.00 drawn to the order of "Cash," which check was not honored because of the lack of sufficient funds to cover the same when presented.
(10) In that on or about September 19, 1963, Officer Armstrong issued a check in the amount of $13.50 drawn to the order of "Cash," which check was not honored because of the lack of sufficient funds to cover the same when presented.
The hearing on said charges was held on December 18, 1963 before the township committee, which hearing was stenographically reported. All of the charges were found to have been sustained except for charge no. 6, which was dismissed. The penalty imposed was removal, effective December 31, 1963.
Armstrong appealed to the Civil Service Commission which, with the consent of counsel, considered the matter on the transcript of the hearing before the township committee and the original exhibits. In addition, Armstrong and his wife were both sworn as witnesses, and testified that their testimony before the Civil Service Commissioner would be the same as that given in the original hearing and that nothing had happened since that would have changed their testimony. Also, there were presented the affidavits of the five other witnesses who had testified before the township committee stating that their testimony would be unchanged from the original hearing and that nothing had occurred since that would cause them to change such testimony.
On the basis of the foregoing record Armstrong was again found guilty of nine of the ten charges specified. However, it was determined that the penalty of removal was "too severe" and that Armstrong should be given "another chance." Accordingly, the penalty was reduced to six months' suspension without pay, and it was ordered that Armstrong should "be paid for back time from that point on." The township prosecutes the instant appeal from said ruling.
*565 Preliminarily we are constrained to disapprove of the procedure followed by the Civil Service Commission in establishing the record before it. In essence, the Commission, with the consent of counsel, considered the matter on the testimony presented to the township committee. This was contrary to the statutory requirement that on appeal from disciplinary action taken by an appointing authority, the Commission shall fix a time and place for hearing, shall hear witnesses and receive all competent evidence produced, and shall determine the case on the evidence presented. R.S. 11:22-39. In Town of West New York v. Bock, 38 N.J. 500 (1962), the Supreme Court in a footnote appearing at page 507 said:
"An appeal to the Commission from municipal action must be heard de novo and determined only on evidence presented anew to it. [Citing the statute and cases.] The testimony taken at the local hearing has no place before the Commission and is not properly reviewable. County of Essex v. Civil Service Commission, 98 N.J.L. 671, 675 (Sup. Ct. 1923)."
We are satisfied that in the instant case the Commission considered the matter de novo. However, since issues of credibility are often involved in this type of hearing, the Commission should generally insist on "live" testimony. There are exceptions, of course. Purely formal proof may be stipulated or presented on an agreed record. Where, however, the weight of testimony must be evaluated, credibility decided, and impressions as to candor and forthrightness received, the deliberative body should have the advantage of seeing and hearing the witnesses.
The appeal here is from a ruling by an administrative agency. Our scope of review is accordingly limited. We may not upset a determination of the Commission in the absence of an affirmative showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the Civil Service Act. Campbell v. Department of Civil Service, 39 N.J. 556, 562 (1963).
*566 Our review of the record, within the scope permitted, leads us to conclude that the original sentence imposed on Armstrong by the township was not excessive, but on the contrary was proper and justified, and that the Commission acted arbitrarily in reducing it to a six month suspension.
It must be recognized that a police officer is a special kind of public employee. His primary duty is to enforce and uphold the law. He carries a service revolver on his person and is constantly called upon to exercise tact, restraint and good judgment in his relationship with the public. He represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public, particularly in a small community such as Moorestown.
With all due sympathy for Armstrong's personal problems, the record demonstrates that he is lacking in stability and maturity. Many of the charges which were found to have been sustained, when considered separately, are not in themselves serious. However, charges nos. 3 and 4, which involve family altercations, a threat to commit suicide, a threat to kill the chief of police, a threat to abandon his home and job, and misuse of firearms, are not inconsequential matters. The chief of police found it necessary to relieve Armstrong of his service revolver because of the reports as to his conduct. Together with the other charges of numerous violations of departmental regulations, the issuance of bad checks, and the incident involving an automobile accident, they present a picture of a lack of good judgment, immaturity of character and emotional instability.
The decision of the Commission in finding Armstrong guilty on charges seven through ten (involving the issuance of four checks which were not honored by the bank when presented for payment because of the lack of sufficient funds) indicated that these charges were technical in nature and of minor import and did not warrant any disciplinary action since no criminal complaints were filed against Armstrong on these transactions. The decision states that three of the four *567 checks were postdated, but Armstrong admitted that two of them were not postdated. Also, as appears from the endorsements, the checks were cashed with local merchants. This might explain the failure to present any criminal charges against Armstrong. In any event, the picture presented is not a good one. Cf. Appeal of Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960).
The decision also minimized Armstrong's threats to commit suicide and kill the chief of police, by finding that these threats were said in a heated moment without any real intention of carrying them out. We cannot agree that a man who makes such threats in a heated moment is the proper kind of person to be entrusted with a service revolver.
As to charge no. 4 dealing with another family altercation, the decision notes that Armstrong was previously suspended for five days without pay for his conduct, so that this incident should not be considered in determining the final penalty under the present charges.
Of course, Armstrong cannot be punished twice for the same offense. However, his "past record" of misconduct may be resorted to for guidance in determining the appropriate penalty for the current specific offense. Town of West New York v. Bock, supra, 38 N.J., at p. 523.
We conclude that the decision of the Commission minimizing the seriousness of the charges and affording Armstrong "another chance" did not consider the realities of the situation. The reasons given by it do not justify the reduction of sentence. As shown by the evidence, supra, Armstrong was guilty of such conduct unbecoming a police officer that his removal was clearly warranted. Borough of Park Ridge v. Salimone, 36 N.J. Super. 485 (App. Div. 1955), affirmed 21 N.J. 28 (1956).
The judgment of the Commission is reversed and the municipal order of removal of Armstrong from the public service is reinstated.