**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3162-21

AJACO TOWING, INC.,

    Petitioner-Appellant,

v.

NEW JERSEY STATE POLICE,

    Respondent-Respondent.

_____

        Submitted December 4, 2023 – Decided April 19, 2024

        Before Judges DeAlmeida and Bishop-Thompson.

        On appeal from the New Jersey Division of State Police.

        Alan R. Ackerman, attorney for appellant.

        Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Patrick Jhoo, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Ajaco Towing, Inc. (Ajaco) appeals from the May 12, 2022 final agency decision of the Division of State Police (NJSP) removing Ajaco from the NJSP towing rotation list for 2021-2022. We affirm.

I.

NJSP is statutorily charged with the primary responsibility for policing and patrolling the State's highways. N.J.S.A. 53:1-11.1. To facilitate its responsibilities, NJSP uses a list of qualified, professional towing operators who work closely with NJSP to provide towing services on a rotating basis for incidents on State highways.

Ajaco was approved by NJSP for inclusion on the towing rotation list for 2021-2022. On August 15, 2021, NJSP dispatched Ajaco to a motor-vehicle accident on Interstate 80. An Ajaco employee towed B.E.'s vehicle from the site of the accident to Ajaco's place of business in Parsippany.[1]

The following day, B.E. appeared at Ajaco's place of business to retrieve his vehicle. A dispute arose between B.E. and Ajaco employees over his inability to pay the cost of towing his vehicle, which Ajaco required as a condition of releasing the vehicle. B.E. called the Parsippany-Troy Hills Police

---

[1] We use initials to protect the identity of the customer involved in the incident that gave rise to this appeal.

Department (PTHPD) for assistance. Two officers responded to Ajaco. B.E., who is Black, informed the officers that he wanted to file a complaint against Ajaco for harassment based on racial animus. He told officers that he believed Ajaco employees were discriminating against him based on his race.

The officers attempted to deescalate the situation by keeping the parties separated and facilitating B.E.'s payment of the towing bill. While the officers were speaking with B.E. in the Ajaco parking lot, Vincent Cleffi, the president and owner of Ajaco, exited the office and positioned himself in a location within listening distance of the officers and B.E. Cleffi began interacting verbally with B.E., to whom he shouted the following:

> You're a fucking punk, you're a punk, let him get the fuck off my property before I drop him on his fucking head.
>
> Go ahead and record it motherfucker, I'll buy and sell you ten times over, you instigating motherfucker.
>
> I am gonna drop that motherfucker. Take your pictures. Stick it up your ass motherfucker. Yeah, go ahead blow me kisses, get him off my fucking property. . . . Get the fuck out of here . . . . I'll drop that motherfucker. Go ahead pull the racial card.
>
> I'll threaten you right in front of the – suck my dick. How does that sound? I don't give a fuck what I say. You know why? Because I can. It's freedom of speech. Yeah, you feel threatened. You're a fucking [n-word].

3

> Go call your girlfriend you pussy whipped
> motherfucker.  He ain't getting his car.

There is no dispute that Cleffi made these statements, which were recorded on the officers' dashcam video recorders and body audio recorders, as well as a surveillance video recorder installed at Ajaco.  Eventually, B.E. paid the towing bill and retrieved his vehicle.

NJSP became aware of the incident and initiated an investigation.  On August 19, 2021, based on an initial review of the officers' recordings, NJSP temporarily suspended Ajaco from the 2021-2022 towing rotation list, pending a full investigation.  NJSP based the suspension on Cleffi's "unprofessional, demeaning, and unethical behavior towards a vehicle owner . . . ."

On September 1, 2021, NJSP received a letter from an attorney on behalf of Ajaco demanding the temporary suspension be lifted.  On September 7, 2021, an Ajaco employee sent NJSP a notice of appeal of the temporary suspension.  On November 9, 2021, the employee sent NJSP a motion to dismiss the temporary suspension, arguing, among other things, that NJSP had not decided the appeal within thirty days, as required by the standard operating procedures (SOPs) for the towing rotation program.

On December 9, 2021, NJSP issued a notice permanently removing Ajaco from the 2021-2022 towing rotation list.  After its investigation, NJSP concluded

A-3162-21

that "Cleffi's conduct included the use of racial epithets and verbal threats of physical violence against" B.E., "which is inconsistent with the professional conduct expected of towing companies who wish to participate in the NJSP's towing rotation." The letter stated NJSP found Cleffi's conduct to be a "serious violation" of the SOPs.[2]

On December 9, 2021, a different attorney contacted NJSP and stated he was representing Ajaco with respect to its removal from the towing rotation list.

On December 27, 2021, an Ajaco employee submitted to NJSP an objection to the removal, a settlement offer, and a motion to dismiss the matter without prejudice. These submissions included, among other things, an unlabeled and unauthenticated document that Ajaco refers to as the "Tsimpedes Report." Ajaco represents that the Tsimpedes Report is the written report of a PTHPD officer who investigated the matter and concluded that Cleffi did not commit a criminal act during his encounter with B.E.

Also on December 27, 2021, Ajaco's counsel requested an adjournment to January 21, 2022, to allow his client to respond to the December 9, 2021 removal. NJSP agreed to the extension.

---

[2] The letter did not address the sexual comment Cleffi made to B.E.

A-3162-21

On January 19, 2022, Ajaco's counsel confirmed his request that NJSP disregard the submissions made by the Ajaco employee because the attorney intended to file an appeal of the removal. In addition, NJSP agreed to the attorney's request for a further adjournment to February 11, 2022, an additional three weeks, to respond to the December 9, 2021 removal.

On February 9, 2022, two days prior to the filing deadline, Ajaco's counsel informed NJSP that Ajaco had decided to proceed without representation by an attorney.

On February 10, 2022, NJSP's counsel wrote to Cleffi asking who would be representing Ajaco with respect to the December 9, 2021 removal and reminded him that the twice-extended deadline for filing an appeal was the following day, February 11, 2022. NJSP's counsel also noted that Ajaco's attorney requested the agency disregard the submissions received from Ajaco's employee and that the thirty-day period for NJSP to issue a final decision had not yet begun to run.

Later that day, another employee of Ajaco responded to NJSP's counsel by email. He attached several documents to his communication, including a letter from Cleffi "refiling" the prior submissions of the Ajaco employee and requesting discovery.

6

On February 11, 2022, an Ajaco employee sent an email to NJSP's counsel stating that "we need additional time to make our final submittals."  NJSP agreed to an extension to March 14, 2022, for Ajaco to file an appeal of the December 9, 2021 removal.

On February 14 and 17, 2022, Cleffi and an Ajaco employee separately submitted a motion to dismiss and a copy of an affidavit previously submitted to NJSP.  NJSP granted Ajaco's request for oral argument.

After an April 12, 2022 telephonic hearing at which Ajaco presented oral argument, Ajaco requested an opportunity to submit additional written materials.  The agency granted that request.  Later that day, Ajaco resubmitted many of the documents it previously filed with NJSP.

Among Ajaco's arguments challenging its removal from the 2021-2022 towing rotation list were that:  (1) Cleffi was not acting as a representative of Ajaco, but as the owner of the real property at which the Ajaco office is located, when he threatened B.E. with physical harm and subjected him to a racial epithet; (2) B.E. intentionally provoked Cleffi, justifying Cleffi's remarks and insulating Ajaco from disciplinary action by NJSP; (3) NJSP's investigation was faulty, based on falsified reports, and violated the Attorney General's protocol for investigating bias crimes; (4) PTHPD was "politically operating to escalate

a potential bias incident and or bait a landlord into racial remarks during an election[;]" (5) B.E. committed criminal acts when he recorded his interactions with Ajaco employees on his cellphone and posted those recordings on the Internet; (6) Ajaco was the victim of crimes perpetrated by the mayor of Parsippany-Troy Hills Township who allegedly publicized the incident to further his political objectives; (7) Cleffi's comments to B.E. were constitutionally protected speech; (8) the SOPs do not expressly permit removal from the towing rotation list for Cleffi's behavior; and (9) NJSP was out of time to issue a final agency decision.

On May 12, 2022, NJSP issued a final agency decision affirming Ajaco's removal from the 2021-2022 towing rotation list. NJSP concluded that because approved towing operators work closely with NJSP officers when serving the public, a towing operator's misconduct or unprofessional behavior with a customer may impugn NJSP's reputation. Thus, the agency concluded, it is necessary that approved towing operators maintain a heightened standard of conduct when interacting with customers assigned by NJSP.

The agency concluded that Cleffi was the registered agent, incorporator, president, and principal of Ajaco and acted in those capacities when he made the offending remarks to B.E. In support of that conclusion, NJSP noted that

8

Cleffi was wearing a shirt with the Ajaco logo during the incident and stated that B.E. would not get his vehicle, which directly connected his statements to Ajaco's towing services. Cleffi's statements to B.E., NJSP found, "undermine[d] the public's trust in NJSP, and diminishe[d] NJSP's ability to safely and effectively enforce the law." The agency concluded that "[t]o be sure, Vincent Cleffi's conduct constituted a serious violation of" the agency's "requirement that tow operators conduct themselves professionally and warranted immediate termination" from the 2021-2022 towing rotation list.

NJSP rejected Ajaco's arguments regarding its alleged status as a crime victim, noting that the county prosecutor declined to bring criminal charges against B.E. or the mayor relating to the incident in question. In addition, the agency found the Attorney General's guidelines for investigating bias crimes are not applicable to Ajaco's removal from the NJSP towing rotation list, which was not based on allegations of criminal conduct. The agency also found that "whether Ajaco was a victim of other crimes has no bearing on the conduct at issue in this termination. Vincent Cleffi's threats of violence, use of profanities, and hurling of an egregious racial epithet towards a patron are inexcusable."

NJSP was not persuaded that Ajaco was harmed by a delay in issuing the December 9, 2021 decision. The agency found that Ajaco produced no evidence

that it suffered identifiable harm as a result of the delay. NJSP noted that Ajaco made multiple adjournment requests after issuance of the December 9, 2021 removal, all of which were granted by the agency. Thus, the ultimate resolution of this matter was delayed by Ajaco. In addition, NJSP found Ajaco proffered no credible evidence the agency's initial investigation was tainted by bias or that the agency lacked jurisdiction to remove Ajaco from the towing rotation list.

NJSP also found unconvincing Ajaco's argument that the SOPs do not allow the agency to remove Ajaco from the towing rotation list based on Cleffi's behavior. The agency concluded that the SOPs unquestionably require tow operators to act professionally with NJSP-referred customers, a standard Cleffi clearly violated. NJSP concluded that Cleffi's threats of physical violence and use of profanity and a racial slur were "inimical to the mission of NJSP" and that removal from the 2021-2022 towing rotation list was warranted.

NJSP concluded that Cleffi's remarks were not entitled to First Amendment protection, see Karins v. City of Atlantic City, 152 N.J. 532 (1998) (affirming discipline of firefighter who used the n-word towards a police officer while off duty); see also Taylor v. Metzger, 152 N.J. 490, 502 (1998) (noting the n-word is an unambiguously racist epithet viewed by courts as "beyond the pale"). The agency rejected Ajaco's remaining arguments as baseless.

10

This appeal followed.  Ajaco argues:  (1) NJSP failed to consider the Tsimpedes Report and recordings from Ajaco surveillance cameras; and (2) the sanction imposed on Ajaco was arbitrary and inconsistent with the SOPs, given that Ajaco had not previously been disciplined.

NJSP argues that the appeal is moot because the termination was limited to the 2021-2022 towing rotation list, which expired at the end of 2022.  Ajaco argues that the appeal is not moot because it raises issues of public importance capable of evading judicial review.[3]

II.

"An issue is considered 'moot when our decision . . . can have no practical effect on the existing controversy.'"  Wisniewski v. Murphy, 454 N.J. Super. 508, 518 (App. Div. 2018) (quoting Redd v. Bowman, 223 N.J. 87, 104 (2015)).  However, when an appeal involves matters of "substantial importance, likely to recur but capable of evading review," mootness does not preclude our review.  Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996).  This is particularly

---

[3]  Ajaco alleges NJSP denied its application to be on the 2023-2024 towing rotation list because of its removal from the 2021-2022 towing rotation list.  The record contains no evidence with respect to the 2023-2024 towing rotation list.  We do not, therefore, consider whether NJSP's alleged rejection of Ajaco's application to be on the 2023-24 list makes this appeal not moot.  See R. 2:5-4(a) ("The record on appeal shall consist of all papers on file in the" agency at the time the final agency decision was issued).

true when the issues raised in the appeal implicate the public interest. City of Plainfield v. N.J. Dep't of Heath & Senior Servs., 412 N.J. Super. 466, 484 (App. Div. 2010).

While Ajaco's removal from the 2021-2022 towing rotation list was rendered moot when the list expired at the end of 2022, we find that the issues raised in this appeal implicate the public interest and are capable of repetition yet evading judicial review. The utterance of threats of physical violence, a sexual remark, and an egregious racial epithet at a customer by a towing operator on the NJSP rotation list, and the appropriate sanction for such conduct, are matters of public concern. In addition, given the two-year cycle of the NJSP towing rotation lists, these issues could continue to arise, yet evade judicial review due to the time necessary to complete the administrative adjudication process and perfect an appeal in this court. As a result, we conclude that our review of Ajaco's appeal is warranted, despite the apparent mootness of the sanction imposed by NJSP.

With respect to Ajaco's substantive claims, our review of decisions by administrative agencies is limited, with petitioners carrying a substantial burden of persuasion. In re Stallworth, 208 N.J. 182, 194 (2011). An agency's determination must be sustained "'unless there is a clear showing that it is

12

arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We are not, however, bound by an agency's interpretation of legal issues, which we review de novo. Russo, 206 N.J. at 27.

We have carefully reviewed the record, including the video and audio recordings created by the PTHPD and Ajaco's surveillance camera, the record of the oral arguments before NJSP, and all documents submitted by Ajaco. We find no basis on which to disturb NJSP's final agency decision or the sanction imposed on Ajaco.

The SOPs provide that "[i]mmediate termination" from the towing rotation list "may occur if . . . there is evidence indicating . . . any serious violation as determined by the NJSP." The record contains sufficient credible evidence to support the finding that Cleffi threatened to physically harm B.E., subjected him to a sexual remark by inviting him to engage in oral sex, and called him an egregious racial epithet. The video recordings of Cleffi's behavior

13

depict a shocking display of inappropriate conduct towards a member of the public by a representative of a company working closely with the NJSP. Those remarks were made in relation to the towing services Ajaco provided to B.E. as a result of Ajaco being on NJSP's 2021-2022 towing rotation list. We have no doubt that the record fully supports NJSP's conclusion that Ajaco committed a serious violation of the SOPs for the towing rotation program.

On appeal, Ajaco relies on the incorrect premise that it may not be sanctioned by NJSP because B.E. provoked Cleffi. There is no legal support for the proposition that a representative of an entity working closely with a law enforcement agency may with impunity direct threats of physical violence, a sexual remark, and a racial slur at a member of the public when provoked. It was entirely reasonable for NJSP to conclude that Cleffi's remarks, even if provoked, harm the agency's standing with the public and warrant removal from the towing rotation list. See In re Phillips, 117 N.J. 567, 576-77 (1990) (noting that law enforcement "must present an image of personal integrity and dependability in order to have the respect of the public") (quoting Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965)). Therefore, the Tsimpedes Report, which is not part of the record but upon which

Ajaco relies in support of its provocation argument, addresses a subject that is not relevant to the validity of NJSP's final agency decision.

Moreover, our review of the record reveals that in the moments before Cleffi made his remarks, the parties were separated, with B.E. in the parking lot with police and Cleffi in the Ajaco office. It was Cleffi who elected to leave the office, step outside, and position himself in listening distance of B.E. and the police. In addition, when Cleffi began his tirade, and before he made the sexual and racial remarks, a fellow Ajaco employee repeatedly urged him to return to the office. Cleffi refused those requests, even physically pushing the employee away as he tried to lead him to the office door. Cleffi also refused to speak to an officer who was attempting to stop Cleffi's outburst. Despite these efforts to control Cleffi, he continued to shout at B.E., making the offending remarks on which the imposition of sanctions by NJSP was based. The record reasonably could be considered to support a conclusion that it was Cleffi who provoked the exchange with B.E. that resulted in Ajaco's termination from the rotation list.

We also find no legal basis for Ajaco's claim that the termination is not warranted because Cleffi was not charged with a criminal act. NJSP's decision is not based on criminal liability, but a violation of the high standards of conduct expected of a towing operator who interacts with the public as part of a working

15

relationship with the NJSP. Id. at 575 (holding that "the absence of a conviction, whether by reason of nonprosecution or even acquittal, bars neither prosecution nor finding of guilt for misconduct" in an administrative proceeding) (quoting Sabia v. City of Elizabeth, 132 N.J. Super. 6, 12 (App. Div. 1975)).

We have reviewed Ajaco's remaining arguments, including its claim that termination is not warranted for a first offense, and find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The SOPs expressly permit termination from the towing rotation list for any serious violation as determined by NJSP.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION