**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1567-23

IN THE MATTER OF RICKIE
DOOLEY, SOUTHERN STATE
CORRECTIONAL FACILITY,
DEPARTMENT OF
CORRECTIONS.

_____

Submitted September 24, 2025 – Decided October 17, 2025

Before Judges Gummer, Paganelli, and Jacobs.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-1372.

Matthew J. Platkin, Attorney General, attorney for respondent Southern State Correctional Facility, New Jersey Department of Corrections (Donna Arons, Assistant Attorney General, of counsel; Jana R. DiCosmo, Deputy Attorney General, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Bernadette Dronson, Deputy Attorney General, on the statement in lieu of brief).

Alterman & Associates, LLC, attorneys for appellant Rickie Dooley (Stuart J. Alterman, on the briefs).

PER CURIAM

Rickie Dooley, a former Senior Correctional Police Officer (SCPO) at Southern State Correctional Facility (SSCF), appeals from a final administrative action of the Civil Service Commission (CSC) terminating his employment with the Department of Corrections (DOC) for conduct unbecoming an employee and other disciplinary charges. We affirm.

I.

Dooley began service as a correctional officer in 2002. During his tenure with the DOC, he was subject to disciplinary reprimands and suspensions for multiple infractions. Between November 2008 and October 2009, he received an official written reprimand and three suspensions for "chronic or excessive absenteeism." In February 2010, he was fined for failing to submit sick-leave documentation. He received an official written reprimand in June 2014 and a three-day suspension in July 2014, for calling out sick with no available sick time. In April 2019, he received a two-day suspension for failing to submit sick-leave documentation.

Aside from these infractions, Dooley was found guilty of operating a vehicle under the influence of alcohol (DUI), N.J.S.A. 39:4-50, in 2003, 2004, and 2019. Although the DOC did not pursue disciplinary action in response to Dooley's first two DUI convictions, it acted following his arrest for a third

offense on November 16, 2019. Three days later, the DOC issued a preliminary notice of disciplinary action (PNDA) charging Dooley with conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), Human Resources Bulletin (HRB) 84-17(C11); violation of a rule, regulation, or procedure, HRB 84-17 (E1); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12). The PNDA summarized details of the November 16 incident giving rise to the charges and referenced Dooley's two prior convictions for DUI.

On July 23, 2020, pursuant to a plea agreement, Dooley pleaded guilty to the third DUI. Consistent with the agreement, a municipal court judge imposed mandatory fines, thirty days of community service, completion of an alcohol education course, and a two-year license suspension. The judge dismissed remaining charges of "refusal to consent to take samples of breath," N.J.S.A. 39:4-50.2, along with charges for reckless driving, N.J.S.A. 39:4-96; careless driving, N.J.S.A. 39:4-97; possessing an open container of alcohol in a motor vehicle, N.J.S.A. 39:4-51B; failure to wear seat belt, N.J.S.A. 39:3-76.2F; and refusal to submit to a chemical test, N.J.S.A. 39:4-50.4A.

The DOC's Special Investigations Division (SID) conducted an investigation and issued a report on August 4, 2020. In addition to citing the DUI charge, the report noted Dooley "did not report his [July 23, 2020] court

3

hearing adjudication to the SSCF Major[']s Office," as required.  The report concluded he had violated multiple DOC policies and procedures.  On February 25, 2021, the DOC issued a final notice of disciplinary action (FNDA), sustaining the charges in the PNDA and imposing a penalty of removal from employment effective February 26, 2021.

Dooley appealed the FNDA, disputing only the penalty imposed.  His appeal was transmitted to the Office of Administrative Law for adjudication.  A two-day hearing began on February 7, 2023 and concluded on May 31, 2023.  At the hearing, the Administrative Law Judge (ALJ) heard testimony from Dr. Gary Glass, who was qualified as an expert in forensic psychiatry.  Dr. Glass diagnosed Dooley as suffering from substance use, generalized anxiety, and major depressive disorders, and attributed his DUI convictions to "alcohol use disorder."  He opined that the absence of discipline or evaluation by the DOC following his first two DUI convictions caused Dooley to assume a "pre-determined style of denial," leading him "to minimize . . . responsibility" for his actions.

Michelle Husted, Dooley's girlfriend, testified that they began dating in the summer of 2018.  She testified Dooley had sought treatment and achieved sobriety after his third DUI conviction.  On cross-examination, Husted

confirmed that on the night of his arrest for the third DUI, she and Dooley had been drinking at her house and that she had "made him leave" after they argued. Notwithstanding that event, she asserted confidence in her ability to support Dooley's efforts to maintain sobriety and his ability to serve as a correctional officer.

Dooley himself testified about his disciplinary history, substance-use problems, and DUI offenses. He confirmed the absence of discipline following his first two DUIs. After the third DUI, he sought medical help and participated in an inpatient program. He claimed his substance issues did not interfere with his job as evidenced by the lack of disciplinary history for on duty substance-related offenses. On cross-examination, Dooley confirmed he was no longer attending Alcoholics Anonymous (AA) meetings because he did not identify with the religious aspects of the organization. Instead, he had been watching videos and reading materials related to recovery from substance abuse. He conceded that departmental policies and procedures permit removal for a single DUI offense and require all correctional officers to follow the rules and regulations twenty-four hours a day.

The DOC called Major Brian Labonne. Major Labonne testified to his responsibilities associated with implementing departmental policies. He stated

A-1567-23

that Dooley's multiple DUIs constituted improper demeanor and contravened public trust in violation of departmental rules and regulations. He also testified that correctional officers are held to the higher standard expected of all law enforcement officers, "both on duty and off duty." Included in this higher standard of conduct is an expectation to cooperate with fellow law enforcement officers. Major Labonne cited his experience and knowledge of the administrative charges and opined removal of Dooley to be an appropriate sanction for a third DUI offense. He confirmed that, as stipulated by the parties, a correctional officer is required to possess a valid driver's license, regardless of seniority or the frequency of his driving responsibilities.

On cross-examination, Major Labonne confirmed the absence of any documents indicating Dooley had undergone a fitness-for-duty evaluation or been disciplined following his first two DUIs. He conceded some correctional officers had remained employed notwithstanding DUI convictions and the loss of driver's licenses.

In considering the appropriate discipline, the ALJ authored a thirty-nine page "summary decision" issued on December 8, 2023. The ALJ noted numerous mitigating factors, including the remoteness of the two earlier DUI convictions, the length of Dooley's service, his voluntary participation in a

treatment program, expression of remorse, that "his drinking occurred . . . off-duty and did not adversely affect his job performance[,]" and that the third DUI constituted Dooley's first major discipline. The ALJ found aggravating factors consisting of the nature of Dooley's offenses; namely, the DUI and refusal to comply with law enforcement by submitting to a breathalyzer. After finding "the mitigating factors and aggravating [to be] either in equipoise, at worst, or the mitigating factors [to] outweigh the aggravating factors," the ALJ determined the penalty of removal inappropriate. Instead, the judge concluded a penalty of six-months' unpaid suspension to be appropriate, conditioning suspension on a satisfactory fitness-for-duty evaluation and regular participation in AA and therapy, as well as other requisites to be ordered by a DOC-selected psychiatrist or psychologist.

The DOC submitted exceptions to the ALJ's decision, and Dooley submitted a reply. In a January 17, 2024 final administrative action, the CSC issued a final decision adopting the ALJ's findings of facts and conclusions of law but declining to adopt the recommendation to modify the removal to a six-month suspension. Rather, the CSC upheld the removal.

Among other findings, the CSC rejected the ALJ's distinction between on-duty and off-duty offenses. The CSC determined Dooley's off-duty status when

7

the DUIs took place did not "lessen[] the severity of the offense[s]."  Moreover, the CSC found Dooley's participation in alcohol and mental health treatment to be inconsistent both before and after his removal from employment.  Finally, the CSC noted that the egregiousness of the act, especially for a senior correctional officer, warranted removal, notwithstanding the principles of progressive discipline.

On appeal, Dooley contends the CSC's decision was arbitrary and capricious in that it failed to apply the concept of progressive discipline, failed to provide him with accommodation for his disability, and placed undue weight on his status as a law enforcement officer.

II.

Our review of agency action is necessarily limited.  We will not disturb an agency's decision unless the court finds it to be "arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole."  In re Stallworth, 208 N.J. 182, 194 (2011) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)); see also Karins v. Atl. City, 152 N.J. 532, 540 (1998).  We do not substitute our judgment for the agency's.  In re Carter, 191 N.J. 474, 483 (2007).  "[Where] substantial credible evidence supports an agency's conclusion, a court may not substitute its

own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). This deferential review applies to disciplinary actions. In re Herrmann, 192 N.J. 19, 28 (2007).

In employee disciplinary proceedings, the agency need only "prove [its] case by a preponderance of the credible evidence." Atkinson v. Parsekian, 37 N.J. 143, 149 (1962). Additionally, a presumption of reasonableness attaches to the actions of administrative agencies. Newark v. Nat. Res. Council in Dep't of Env't Prot., 82 N.J. 530, 539-40 (1980). We defer to the expertise of agencies where substantial evidence supports the agency's determination. Stallworth, 208 N.J. at 194.

"An employee may be subject to discipline" for "[c]onduct unbecoming a public employee." N.J.A.C. 4A:2-2.3(a)(6). "Conduct unbecoming" refers to "any conduct which adversely affects the morale or efficiency of the bureau . . . [or] which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Karins, 152 N.J. at 554 (alteration in original) (quoting In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960)).

We examine Dooley's arguments against these well-established standards.

Progressive Discipline

To ensure "proportionality and uniformity in the rendering of discipline of public employees[,]" our Supreme Court endorsed the principles of progressive discipline. Stallworth, 208 N.J. at 195. Those principles predicate the severity of punishment on the seriousness of the offense committed and the employee's disciplinary record. Id. at 195-96. "The number and remoteness or timing of the offenses and their comparative seriousness, together with an analysis of the present conduct, must inform the evaluation of the appropriate penalty." Id. at 199.

In instances where an employee "engag[ed] in conduct that is unbecoming to the position[,]" our Court has upheld an employee's termination regardless of disciplinary record. Herrmann, 192 N.J. at 34. Pertinently, dismissal of an officer with an unblemished record "for [a violation] that went to the heart of the officer's ability to be trusted to function appropriately in his position" does not contravene the principles of progressive discipline. Id. at 35 (citing Cosme v. Bureau E. Newark Twp. Comm., 304 N.J. Super. 191, 206 (App. Div. 1997)). That is so because "the theory of progressive discipline [is not] a fixed and immutable rule to be followed without question." Carter, 191 N.J. at 484. Rather, "some disciplinary infractions are so serious that removal is appropriate

notwithstanding a largely unblemished prior record." Ibid.

Again, Dooley does not dispute the charges against him, only the penalty. He maintains the penalty of removal contravenes the principle of progressive discipline because the CSC disregarded the temporal remoteness of the first two DUI offenses, which occurred approximately fifteen years before the third DUI. The DOC maintains that notwithstanding the remoteness of the prior offenses, the quantity and egregiousness of Dooley's offenses warrant the penalty of removal.

In its final administrative action, the CSC elaborated on its reasoning in support of the DOC's determination:

> In determining the propriety of the penalty, several factors must be considered, including the nature of the [Dooley's] offense, the concept of progressive discipline, and the employee's prior record. . . . However, it is well established that where the underlying conduct is of an egregious nature, the imposition of a penalty up to and including removal is appropriate, regardless of an individual's disciplinary history. . . . Even when a law enforcement officer does not possess a prior disciplinary record after many unblemished years of employment, the seriousness of an offense may nevertheless warrant the penalty of removal where it is likely to undermine the public trust. In this regard, the Commission emphasizes that a law enforcement officer, such as a [SCPO], is held to a higher standard than a civilian public employee.
>
> [(Citations omitted).]

11

The DOC's assessment is consistent with the law. The conduct at issue was particularly egregious. As a senior correctional officer with approximately nineteen years of experience, Dooley was "a special kind of public employee . . . . He represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public." Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). The CSC did not err in concluding his multiple convictions for DUI and refusal to cooperate with law enforcement had the capacity to undermine public trust and run contrary to the higher standard to which senior correctional police officers are held. See Bowden, 268 N.J. Super. at 305-06 ("The need for proper control over the conduct of inmates in a correctional facility and the part played by proper relationships between those who are required to maintain order and enforce discipline and the inmates cannot be doubted."). In view of this precedent, the CSC's decision to uphold the penalty of removal does not contravene the principle of progressive discipline.

Accommodation and Employment Status

Dooley relies on the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50 and N.J.A.C. 13:13-2.5(b) and maintains the CSC's decision was arbitrary and capricious because it did not provide Dooley with

12

"the reasonable accommodation of . . . confronting and treating his addiction." Dooley makes that argument even though the record is devoid of any evidence he requested an accommodation after his first, second, or even third DUI. The CSC counters that Dooley's removal was not based on any purported disability but rather on his misconduct. It notes that discrimination against an individual with a disability is prohibited, "unless the nature and the extent of the handicap reasonably precludes the performance of the particular employment," quoting N.J.S.A. 10:5-4.1. Further, the CSC contends the LAD does not prevent the removal of employees who are unable to adequately perform their duties, citing Clowes, 109 N.J. at 590-91.

Generally, "[a]n employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." N.J.A.C. 13:13-2.5(b). Further, an employer need not provide a reasonable accommodation where: (1) the individual's disability "precludes the performance of the essential functions of the particular employment even with reasonable accommodation," or (2) "the employment of that individual in a particular position would be hazardous to the safety or health" of the individual or others. N.J.A.C. 13:13-2.8(a). "Nothing

in the LAD protects employees from termination if they are not performing the essential functions of the employer's legitimate expectations." Domurat v. Ciba Specialty Chems. Corp., 353 N.J. Super. 74, 92 (App. Div. 2002).  We perceive nothing arbitrary, capricious, or unreasonable about the CSC's determination that Dooley's multiple DUIs had the capacity to undermine the public interest and were not in line with the higher standard of conduct for correctional officers.

Finally, Dooley contends the CSC placed "undue weight" on Dooley's status as a correctional officer.  As the CSC accurately noted, this court has long held that a correctional officer, even one with "personal problems," is held to a higher standard than a civilian public employee.  Armstrong, 89 N.J. Super. at 566.  Dooley's contention that the CSC did not properly consider or weigh relevant factors pertaining to his disability or status is without merit.

Agency Findings and Decision

Where an agency rejects or modifies an ALJ's findings of fact unrelated to issues of witness credibility, N.J.S.A. 52:14B-10(c) provides that "the agency head shall state with particularity the reasons for rejecting the findings and shall make new or modified findings supported by sufficient, competent, and credible evidence in the record."

The record establishes that the CSC stated with particularity its reasons

14

for rejecting the ALJ's recommendation for a penalty and made findings supported by sufficient credible evidence, including: (1) egregiousness of the DUI offense and refusal to submit to a breathalyzer; (2) Dooley's heightened duty as a correctional officer to maintain an image of personal integrity; and (3) Dooley's inconsistent and insufficient rehabilitative efforts.

In sum, there was nothing arbitrary, capricious, or unreasonable in the CSC's decision to uphold the DOC's removal of Dooley. The agency's conclusions were supported legally and by substantial evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15

A-1567-23