**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0825-14T2

IN THE MATTER OF
BASEM ZAGHLOUL
CITY OF NEWARK
POLICE DEPARTMENT.

Submitted December 14, 2016 — Decided March 10, 2017

Before Judges Alvarez and Accurso.

On appeal from the Civil Service Commission,
Docket No. 2012-2210.

Fusco & Macaluso Partners, LLC, attorneys for
appellant Basem Zaghloul (Amie E. DiCola, on
the brief).

Willie L. Parker, Corporation Counsel,
attorney for respondent City of Newark
(Corinne E. Rivers, Assistant Corporation
Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent Civil Service
Commission (Pamela N. Ullman, Deputy Attorney
General, on the statement in lieu of brief).

PER CURIAM

Basem Zaghloul, a Newark police officer, appeals from the

October 1, 2014 final decision of the Civil Service Commission

(Commission) imposing a ten-day suspension.  We affirm.

A preliminary notice of disciplinary action (PNDA) dated October 24, 2011, charged Zaghloul with the following violations: charge one, violations of Newark Police Department Rules and Regulations, Chapter 3:1.1 and N.J.A.C. 4A:2-2.3(a)(6), conduct unbecoming a public employee; charge two, insubordination in violation of Newark Police Department Rules and Regulations, Chapter 18:8 and N.J.A.C. 4A:2-2.3(a)(2); charge three, a violation of Newark Police Department Rules and Regulations, Chapter 5:4.1, obedience to orders; charge four, violation of Newark Police Department Rules and Regulations, Chapter 5:1.2, use of foul language; and charge five, violation of Newark Police Department Rules and Regulations, Chapter 3:1.2-4, demonstration of respect.

The charges arose from an October 12, 2011 incident when Zaghloul stopped by his office, while on vacation, to drop off a check for a fundraiser. Detective Stacey Pickett and Detective Antonia Rosa happened to be in the midst of reviewing forms Zaghloul had recently completed and were discussing errors he had made. Zaghloul became angry when the women told him about their concerns and, during the conversation which ensued, he referred to Pickett as "baby" and "sunshine." When Pickett told Zaghloul to address her as either "Stacey" or "Pickett," Zaghloul became irate. The discussion rapidly deteriorated until he began to yell

profanities at Pickett, telling her "I don't give an F about this work. I don't give an F about you. F you."

Sergeant Beatrice Golden, the supervisor, entered Pickett's office shortly after the confrontation began. The argument could be heard in areas accessible to the public, not just to the police. Pickett and Rosa testified that Zaghloul ignored Golden's order when she told him to leave the building. On his way out, Zaghloul either kicked or pulled a chair over onto the floor and went into the deputy chief's office.

The final notice of disciplinary action (FNDA) imposed a ten-day suspension on the charges. Zaghloul appealed, and the matter was transmitted to the Office of Administrative Law (OAL) for a hearing under the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15, and the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1.1 to -21.6.

At the hearing, a number of documents were introduced through the testimony of Sergeant Julio Benavente. He conducted the internal affairs investigation, including the taking of statements. He said that Zaghloul had been reassigned to patrol duty, and that the deputy chief had told him he was transferred because of the incident.

Unfortunately, although the OAL hearing began on October 22, 2012, it did not resume until over a year later on November 18,

2013. On that date, counsel for the City of Newark (City) stated that she had noticed two additional witnesses, Deputy Chief Israel Caraballo and Golden. Even though the ALJ waited for over an hour, neither appeared.

Zaghloul's attorney then moved to dismiss the matter because in his view "the City hasn't completed [its] case." The ALJ asked Zaghloul's attorney if he planned to proffer Zaghloul as a witness, and his attorney responded that "he should not be forced into testifying . . . ." The attorney argued that it was unfair that the State had not produced the two witnesses as they were "crucial." The ALJ pointed out that he also had the opportunity to subpoena them, and that even if Caraballo and Golden did not appear, the City had the option of resting on the testimony of the witnesses it had produced. Hence, the ALJ denied the motion to dismiss. She also said there was no reason to continue the matter, although Zaghloul's attorney had not requested a postponement. The ALJ closed the record and directed that counsel simultaneously submit their summations in writing.

The ALJ held that the appointing authority had met its burden of proof by a preponderance of the credible evidence. In support of the decision, she recounted Benavente's testimony regarding Pickett and Rosa's incident reports, which included the initial descriptions of the argument between Zaghloul and Pickett, and

their description of Golden's order to Zaghloul to leave the building, which he ignored.

The ALJ credited Rosa and Pickett's testimony that Zaghloul began to yell profanities and wave his arms in an angry manner when they began to talk to him about his work. Both witnesses said Golden ordered Zaghloul to leave the building, and he instead knocked a chair over and walked into the deputy chief's office.

The ALJ specifically rejected Zaghloul's argument that he did not have the opportunity to "put in a defense" or to "testify" because of Caraballo and Golden's failure to appear. No interlocutory appeals were taken, nor any subpoenas served by Zaghloul on any officers. He could have testified, but chose not to. In considering the appropriate sanction, she noted that no mitigating factors had been presented which warranted a reduction in the penalty.

Zaghloul filed exceptions to the ALJ's decision. On October 1, 2014, the Commission "accepted and adopted the [f]indings of [f]act and [c]onclusion."

On appeal, Zaghloul raises the following two points:

> POINT ONE
> THE COURT SHOULD REVERSE THE CIVIL SERVICE COMMISSION'S FINAL ADMINISTRATIVE ACTION BECAUSE [THE ALJ'S] DECISION WAS MANIFESTLY MISTAKEN AND NOT SUPPORTED BY THE RECORD AS [] ZAGHLOUL HAD A RIGHT TO RELY ON THE CITY OF NEWARK'S SUBPOENAS, THE CITY OF NEWARK

5

WOULD NOT HAVE SUFFERED PREJUDICE IF THERE WAS A SHORT ADJOURNMENT OF THE HEARING, AND [THE ALJ'S] ACTIONS TO THE CONTRARY WERE ARBITRARY AND CAPRICIOUS.

POINT TWO
THE COURT SHOULD REVERSE THE CIVIL SERVICE COMMISSION'S FINAL ADMINISTRATIVE ACTION BECAUSE THE PENALTY IMPOSED BY THE CIVIL SERVICE COMMISSION WAS DISPROPORTIONATE IN LIGHT OF ALL THE CIRCUMSTANCE[S] AS [] ZAGHLOUL WAS ALREADY DEMOTED AND TRANSFERRED FOR HIS ACTIONS ON OCTOBER 12, 2011 WHEN HE WAS ADMINISTRATIVELY CHARGED.

I.

Appellate courts have a "limited role" in reviewing administrative agency decisions. In re Stallworth, 208 N.J. 182, 194 (2011). An agency's judgment may only be reversed if it was "arbitrary, capricious, [] unreasonable, or [] not supported by substantial credible evidence in the record as a whole." Ibid. (second alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "The application of those principles is not limited to whether a violation warranting discipline has been proven; this 'deferential standard applies to the review of disciplinary sanctions as well.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

II.

Pickett and Rosa's testimony was straightforward. Zaghloul lost his temper when told not to refer to Pickett by anything

other than her name, and when Pickett and Rosa criticized his work. He used foul language, engaged in threatening and inappropriate behavior, including knocking over a chair as he left the room and stormed into his superior's office, disregarding the supervising officer's order to leave the building. Uncontroverted credible evidence proved the charges.

The decision of the ALJ, adopted by the Commission, enjoys a presumption of reasonableness. In light of the testimony, it was not arbitrary, capricious, or unreasonable. It was supported by substantial, credible evidence in the record as a whole. See Stallworth, supra, 208 N.J. at 194.

We further note that on the last day of the hearing, counsel did not request that the ALJ carry the matter so he might subpoena Caraballo and Golden. Zaghloul had the option to issue his own subpoenas for those witnesses if he viewed them as critical to his defense and could have done so after the first day of the hearing. Obviously, Zaghloul had the opportunity to testify, but proceeded instead on the theory that the police department's proofs were inadequate. That he now regrets the strategic choices he made does not make the Commissioner's decision erroneous.

### III.

Benavente mentioned that Zaghloul had been assigned to patrol duty and that the deputy chief said it happened because of the

incident. No evidence was introduced that the transfer was action taken against him. Although hearsay is admissible in an OAL proceeding, we know nothing about the particulars of the transfer. See N.J.A.C. 1:1-15.5(b) ("Notwithstanding the admissibility of hearsay evidence [in administrative proceedings] some legally competent evidence must exist to support each ultimate finding of fact . . ."). Without that information, Zaghloul's argument that he has been punished twice for the same offense is untenable. The details regarding his reassignment are simply unknown. He had worked in the office where the incident occurred only a short time, and we cannot speculate as to the conditions of that assignment, or the actual circumstances surrounding his return to patrol detail. The connection Zaghloul makes between the reassignment and punishment lacks record support.

It is commonplace that a police officer is a "special kind of public employee" who "represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public." In re Carter, 191 N.J. 474, 486 (2007) (quoting Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965), certif. denied, 47 N.J. 80 (1966)). That high standard is one a police officer voluntarily undertakes upon acceptance of his employment in the service of the

public.  In re Phillips, 117 N.J. 567, 577 (1990) (citing In re Emmons, 63 N.J. Super. 136, 142 (App. Div. 1960)).

In disciplinary actions involving police officers, "courts should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision."  Carter, supra, 191 N.J. at 486.

Thus, we do not find fault with the Commission's decision that the ten-day suspension was proper.  In light of Zaghloul's conduct on the day in question, the Commission's decision is not arbitrary, unreasonable, or capricious.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION