**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0173-23

IN THE MATTER OF JOHN
DADURA, WILDWOOD CITY,
DEPARTMENT OF PUBLIC
SAFETY AND PUBLIC AFFAIRS.

_____

Submitted February 10, 2025 – Decided February 21, 2025

Before Judges Smith and Vanek.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2022-1148 and 2022-1150.

The Vigilante Law Firm, PC, attorneys for appellant John Dadura (Jacqueline M. Vigilante, of counsel; Christopher J. Ross, on the briefs).

Testa Heck Testa & White, PA, attorneys for respondent City of Wildwood (Justin R. White, on the brief).

Matthew J. Platkin, Attorney General attorney for respondent New Jersey Civil Service Commission (Charles A. Shadle, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant, Police Officer John Dadura, appeals from the Civil Service Commission's (the Commission) final order affirming the sixty-working-day suspension penalty imposed against him by his employer, the City of Wildwood, Department of Public Safety and Public Affairs (WPD). We affirm, substantially for the reasons set forth by the Commission.

I.

The Administrative Law Judge's (ALJ) findings of fact and conclusions of law, rendered after an Office of Administrative Law hearing, were adopted in full by the Commission in its final written decision. Neither party disputed the ALJ's factual findings.[1] We recount the most salient factual findings informing our decision.

Dadura has been a police officer with the City of Wildwood for over ten years, attending a police academy prior to his appointment. On March 22, 2021, WPD Chief Robert Regalbuto issued a personnel order assigning Dadura to the Cape May Police Academy for retraining due to performance issues related to his handling of an intoxicated female suspect who was disorderly and resisting arrest.

---

[1] WPD filed exceptions to the ALJ's modification of the working-day suspension penalty from sixty to thirty days. Dadura responded to the WPD's exceptions on that issue. Neither party contested the ALJ's factual findings.

A-0173-23

On March 28, 2021, the WPD dispatch advised Dadura of a report that a Hispanic male kicked a soccer ball through a window of a building. Body worn camera (BWC) footage captured Dadura's initial contact with the suspect. As he drove in his police vehicle, Dadura shouted "yo bud, get over here" and the suspect "took off running." BWC footage showed Dadura rolling through another stop sign. Dadura identified the suspect on the sidewalk again and attempted to get out of his vehicle, but the suspect continued to evade Dadura, who continued to follow him in the police vehicle.

While driving, Dadura reached with his right hand to unholster his taser, switched it to his left hand and held it out his driver's side window. Officers are instructed to hold the taser straight, as they would a firearm, rather than in a canted position. BWC footage showed Dadura held the taser horizontally out of his driver's side window in his left hand as he drove, while yelling at the suspect, "yo, yo, I don't mind, I'll tase your ass. Stop dude! Don't make me tase you!" Dadura holstered his taser after eleven seconds and stated, "I'm not running man. I got all day."

Dadura exited his vehicle as the suspect jumped over a yellow brick wall and into his yard. Dadura followed through the gate in the wall and yelled,

"you're under arrest, get over here! Turn around. Turn around. Turn around!
. . . . Are you fighting me? Turn around. Give me your f-ing hands . . . ."

After this incident, the Chief signed another personnel order immediately reassigning Dadura to administrative duty. About sixty days later, a Performance Improvement Plan (PIP) for Dadura was implemented. The PIP was required to be followed by both Dadura and the WPD, with Dadura completing retraining at the police academy under the March 22 personnel order. The PIP also mandated that Dadura complete a FTO [2] program after the academy, along with a taser course.

The PIP detailed the four prior Final Notices of Disciplinary Actions against Dadura, along with the sixty-working-day suspension at issue. A 2018 incident also involved a taser and, in 2016, Dadura was investigated for having marijuana in his vehicle that was not the result of an arrest.

The ALJ determined Dadura's actions on March 28, 2021 violated a variety of WPD rules, along with N.J.A.C. 4A:2-2.3(a)(1), Incompetency, inefficiency or failure to perform duty; N.J.A.C. 4A:2-2.3(a)(3), Inability to perform duties; N.J.A.C. 4A:2-2.3(a)(7), Neglect of duty; and N.J.A.C. 4A:2-2.3(a)(12), Other sufficient cause. The ALJ found Dadura's conduct "also

---

[2] The acronym "FTO" is not defined in the record.

constituted a violation of [c]onduct unbecoming a police officer under common law of the State of New Jersey," and determined the WPD "met its burden of proof by a preponderance of the credible evidence."

The ALJ sustained the charges and specifications against Dadura but modified the penalty from a sixty to a thirty-working-day suspension without pay. The ALJ stated its modification of the WPD's penalty was "based on theories of progressive discipline since this discipline arose before [Dadura] could receive the training anticipated . . . ."

On August 7, 2023, the WPD filed exceptions pursuant to N.J.A.C. 1:1-18.4, contesting the ALJ's penalty reduction, and requesting the Commission reinstate the sixty-working-day penalty. Dadura did not file any exceptions to the ALJ decision, responding only to WPD's exceptions, arguing "[t]he [ALJ] made adequate and reasonable factual determinations based on the record before it." Dadura posited that:

> the ALJ conducted an expansive and thorough review of both the facts underlying the charges and [Dadura]'s disciplinary history. Based on that review, the [ALJ] concluded that a [thirty-day] unpaid suspension is the appropriate penalty under principles of progressive discipline. A thirty-day unpaid suspension is a significant imposition of discipline and represents a major discipline on [Dadura]'s record. Such a penalty is also in accordance with progressive discipline.

The Commission adopted the ALJ's findings of fact and legal conclusions, modifying only the penalty as follows:

> [Dadura]'s misconduct in this matter was troubling, especially given the fact that he has had prior disciplines for similar misconduct regarding the use of a taser, and the potential impact on public safety. While [Dadura]'s prior disciplinary suspensions were of a lesser degree, given the repetitive nature of the misconduct, the [sixty-working-day] suspension in this matter is appropriate and should impress upon [Dadura] the inappropriate nature of his misconduct and serve as a warning that any future misconduct will be met with more severe discipline, up to and including removal from employment. Finally, the [Commission] highly recommends that the appointing authority, if it has not already done so, send [Dadura] to a [taser] training course.

Dadura appealed the Commission's final decision.

## II.

### A.

Under our limited scope of review, we conclude the Commission's decision to impose the sixty-working-day penalty was not arbitrary, capricious, or unreasonable. See Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

6

We review the Commission's final order to determine whether there has been "a showing that it was arbitrary, capricious[,] or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." In re Hendrickson, 235 N.J. 145, 160 (2018) (quoting State v. Roth, 95 N.J. 334, 364 (1984)). The judicial role in reviewing an administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars, 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)) (citations omitted).]

This well-known standard has engrained within it a degree of deference that prohibits us from substituting our judgment for the agency's merely because we might have come to a different outcome. See Hendrickson, 235 N.J. at 150; In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994))

7

("A strong presumption of reasonableness attaches to the actions of the administrative agencies").

Our deference extends to the agency's choice of disciplinary sanction. See In re Herrmann, 192 N.J. 19, 28 (2007); Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 431-32 (1975) (reversing our decision because the agency's penalty was not "unduly severe"). We "alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority[,]'" because we lack the "power to act independently as an administrative tribunal or to substitute its judgment for that of the agency." Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)). In reviewing administrative sanctions or penalties we determine ". . . whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Herrmann, 192 N.J. at 28-29 (quoting Polk, 90 N.J. at 578).

## B.

The Commission has long considered progressive discipline, predicated on the notion that "past misconduct can be a factor in the determination of the appropriate penalty for present misconduct." Id. at 29. The Commission has applied progressive discipline to "support the imposition of a more severe

penalty for a public employee who engages in habitual misconduct" and "to mitigate the penalty for a current offense." Id. at 30, 32. Progressive discipline need not "be applied in every disciplinary setting," appropriately bypassed "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." Id. at 33.

When progressive discipline is applied, "an employee's past record with emphasis on the 'reasonably recent past' should be considered." Stallworth, 208 N.J. at 199 (quoting West New York v. Bock, 38 N.J. 500, 524 (1962)). "This includes consideration of the totality of the employee's work performance, including all prior infractions." Ibid. (emphasis added). "The number and remoteness or timing of the offenses and their comparative seriousness, together with an analysis of the present conduct, must inform the evaluation of the appropriate penalty." Ibid.

Law enforcement officers are held to a higher standard of conduct than other individuals because they are "held up as . . . model[s] of proper conduct." In re Emmons, 63 N.J. Super. 136, 141-42 (App. Div. 1960). They "represent[] law and order to the citizenry and must present an image of

9

personal integrity and dependability in order to have the respect of the public." Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965).

C.

Considering the nature of Dadura's misconduct and the proofs before the Commission, we conclude the Commission's final decision reinstating the sixty-working-day penalty was not arbitrary, capricious, or unreasonable. The BWC footage establishes Dadura failed to conform to the high standards of conduct placed on police officers by violating several WPD procedures through driving a police vehicle down the street while pointing a taser out the window at a fleeing suspect and by using foul language unbecoming of an officer when attempting to arrest the suspect. See Emmons, 63 N.J. Super. at 141-42. The Commission considered "the totality of [Dadura]'s work performance, including all prior infractions" as set forth in the PIP. Stallworth, 208 N.J. at 199 (emphasis in original).

Through the required deferential lens, we conclude the sixty-working-day penalty reinstated by the Commission is not disproportionately unfair in light of all the circumstances. We affirm, substantially for the reasons set forth by the Commission.

10

III.

We are unconvinced Dadura's newly-minted argument that the Commission erred in adopting the ALJ's factual findings is anything but invited error, which "'bar[s] a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error.'" N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 340 (2007) (quoting Brett v. Great Am. Recreation Inc., 144 N.J. 479, 503 (1996)). Dadura not only failed to contest the ALJ's factual findings but implored the Commission to adopt them. Having done so, we decline to find the Commission's adoption of the ALJ's factual findings arbitrary, capricious or unreasonable.

To the extent we have not addressed any of Dadura's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0173-23