**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1438-23

THOMAS MALONEY,

    Plaintiff-Respondent,

v.

BOROUGH OF CARLSTADT,

    Defendant-Appellant.

_____

Argued November 13, 2024 – Decided March 6, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3281-21.

Catherine M. Elston argued the cause for appellant (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

Kenneth Ralph argued the cause for respondent (Bruno & Ferraro, attorneys; Kenneth Ralph, of counsel and on the brief).

PER CURIAM

Plaintiff Thomas Maloney was a commissioner with the Carlstadt Sewerage Authority when he shared a pornographic video in a Facebook messenger group comprised of about seventy-five people. The video depicted "a naked man defecating onto a naked woman's face." After a former resident complained, defendant Borough of Carlstadt commenced an investigation that resulted in plaintiff's removal based on a recommendation by a hearing officer who conducted a disciplinary hearing.[1]

Plaintiff successfully challenged his removal by filing an action in lieu of prerogative writs against defendant. After the trial court granted plaintiff summary judgment and reinstated plaintiff to his position, defendant appealed, and we granted defendant's motion for a stay pending appeal. In an unpublished opinion, we subsequently reversed and remanded for the motion judge to address the issue "of whether an appointed public official's private conduct can constitute misconduct in office under N.J.S.A. 40:14A-5(c)." Maloney v. Borough of Carlstadt, A-0190-21 (July 10, 2023) (slip op. at 11-12). Following the remand proceeding, the judge ruled plaintiff's private conduct did not constitute misconduct in office under N.J.S.A. 40:14A-5(c) and again granted

---

[1] The video was posted on February 8, 2020. Plaintiff's term as a commissioner was scheduled to expire on January 31, 2023. Defendant passed a resolution removing plaintiff as commissioner on April 7, 2021.

plaintiff summary judgment in a January 5, 2024, order.  The judge also denied defendant's motion for summary judgment.

Defendant now appeals from the judge's second grant of summary judgment, arguing that, as an appointed public official, plaintiff "is to be held to a higher standard of conduct" and neglected his statutory duty under N.J.S.A. 40:14A-5(c) to act "with integrity" in his private life and "treat all individuals with dignity and respect," thereby warranting removal.  Because we agree with the judge that misconduct in office under N.J.S.A. 40:14A-5(c) requires that the act be related in some way to the wrongdoer's office, which was not the case here, we affirm.

The core facts underlying this appeal are not in dispute.  We incorporate by reference the facts detailed in our prior opinion and will not repeat them here. Maloney, slip op. at 2-6.  We only reiterate that the video

> consisted of a "[thirty-eight-] second recording of a naked male defecating in the mouth and onto the face of a topless female, who appears on her knees in a bathroom."  The video was accompanied by text, which read, "Shit Happens, Thug Life, Dug Life, and Bitch." Plaintiff sent the video along with the message, "Don't say nothing.  Keep it going lmao!" followed by several emojis.
>
> [Id. at 2-3 (alteration in original).]

3

During the disciplinary hearing, "plaintiff admitted posting the video, but claimed that he intended to send it to only one person, not the entire group. He also acknowledged feeling 'embarrassed because of it.'" Id. at 3.

Following the hearing, in ruling that plaintiff's conduct constituted misconduct in office, the hearing officer

> determine[d] that the transmission of the pornographic and highly offensive, sexist and misogynistic video, in and of itself, constitute[d] misconduct and neglect of duty. . . . The complained[-]of behavior was . . . exhibited in public, in a chatroom, that was intended for Carlstadt and Bergen County residents. . . . The intentional transmittal itself reflects poor judgment, even if it was sent accidentally to the group. It is perceived as a reflection of [plaintiff's] attitude towards women. It impacts upon the morale of subordinates and co-workers, and demonstrates total disrespect for his position as commissioner. It further destroys public trust and confidence in the operation of the municipality and its leaders. This behavior clearly offends accepted standards of decency to any person of ordinary sensibilities.

On remand, in a written statement of reasons accompanying the January 5, 2024, order, the motion judge found that although plaintiff's conduct was "vile and misogynistic," it "was not misconduct in office" because there was "no connection between the conduct and sewerage authority business, operations, or personnel." According to the judge, "[t]here was no allegation of misappropriation of Borough resources or dealings with Borough employees.

4

[Plaintiff] did not identify himself by his full name or represent himself as an acting commissioner."

The judge explained:

> [Defendant] would have the court find [plaintiff's] removal proper based upon the subject matter of the video tape. As the court wrote in its earlier opinion, it does not endorse [plaintiff's] behavior, but the sharing of a pornographic video, the failure to admit the same[,] and the failure to timely apologize does not elevate the conduct (which was not intended for the person lodging the complaint . . .) to misconduct in office or neglect of duty. . . . [Plaintiff's] testimony that he intended to share the video with one other person . . . is unrefuted. It is also unrefuted that [plaintiff] did not appreciate that his sending the video to . . . another member of the Facebook group[] would make it visible to all members of the group.
>
> . . . [T]he court finds that as despicable as [plaintiff's] actions may be, they constitute "private conduct" and were unrelated to his role as a commissioner and therefore do not constitute "misconduct in office."

The judge also found unpersuasive defendant analogizing this case to cases involving police misconduct, expounding:

> A police officer is a statutory office. It refers to a regular, sworn, appointed municipal officer who has the full power to arrest and who regularly exercise[s] police powers regarding the enforcement of the general criminal laws of this State. N.J.A.C. 13:80A-1.4. A sewerage commissioner is not a police officer. A sewerage commissioner is not on duty 24-7. A

5                                                                 A-1438-23

sewerage commissioner is an appointed official serving a term of office. Police officers have long been distinguished in statute and case law as having special duties, immunities, and prohibitions.

> . . . .

> . . . Again, the court does not endorse [plaintiff's] conduct. However, as offensive as the conduct may be the degree of offensiveness does not make it misconduct in office. To decide otherwise would require inquiry into the private emails, texts and chats of public officials and subjectively reviewing those for tastelessness, offensiveness, or political incorrectness. . . . [Defendant] apparently proposes to search the homes and workplaces of its public officials to determine whether they possess objects and materials which warrant[] the official[']s removal. The court declines to adopt that standard as a basis for the removal of an official as "misconduct in office."

> [(Emphasis omitted).]

Finding plaintiff's termination "arbitrary, unreasonable, and unlawful," the judge again granted plaintiff summary judgment, and this appeal followed.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the

non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.

[Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citation reformatted).]

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), overruled in part on other grounds by Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558 (2012)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

Likewise, "[w]hen reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). Under that

7

standard, "[w]e give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Ibid.

A municipality acts "arbitrarily, capriciously, or unreasonably if its findings of fact . . . are not supported by the record," or if it "usurps power" not otherwise allotted to it. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013). "Basically, the reviewing court must determine whether the board . . . followed the statutory guidelines and properly exercised its discretion." Menlo Park Plaza Assocs. v. Planning Bd. of Woodbridge, 316 N.J. Super. 451, 460 (App. Div. 1998). And, "[i]n construing the meaning of a statute, an ordinance, or our case law, our review is de novo." 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015). Whether private conduct can constitute misconduct in office under the statute is a question of law. See, e.g., Karins v. City of Atl. City, 152 N.J. 532, 553 (1998) ("The determination of what constitutes conduct unbecoming a public employee is primarily a question of law."). Therefore, this court owes no deference to the motion court's conclusions on that question. MTK Food Servs., Inc., 455 N.J. Super. at 312.

N.J.S.A. 40:14A-5(c)[2] provides in relevant part that "[a] member of a sewerage authority may be removed only by the governing body by which [the member] was appointed and only for inefficiency or neglect of duty or misconduct in office." However, the statute does not define "misconduct in office," nor do any cases citing the statute discuss what satisfies misconduct under the statute. Looking to the common-law offense of misconduct in office and the statutory offense of official misconduct, N.J.S.A. 2C:30-2, for guidance may be instructive.

> The contours of the common-law offense were not always perfectly clear. State v. Hinds, 143 N.J. 540, 544 (1996). Before the common-law offense was abolished in 1979 by the Code of Criminal Justice, courts brought clarity to the offense by requiring as an element of the offense that the alleged conduct "involved and touched" the public employment of the accused. Id. at 546. Whether the offense was committed off-duty or during the working hours was not relevant. Ibid.; State v. Bullock, 136 N.J. 149, 153-55 (1994); State v. Johnson, 127 N.J. 458, 462-63 (1992); Ward v. Keenan, 3 N.J. 298, 309-11 (1949).
>
> [Karins, 152 N.J. at 553-54.]

---

[2] In defendant's first appeal, we agreed with the judge that N.J.S.A. 40:14A-5 governed plaintiff's removal because plaintiff was appointed to a five-year term with the sewerage authority under N.J.S.A. 40:14A-4(a), making it "clear that plaintiff was the holder of a public office rather than a public employment and that his appointment was for a term fixed by statute." Maloney, slip op. at 9-10 (quoting Golaine v. Cardinale, 142 N.J. Super. 385, 393 (Law Div. 1976)).

A-1438-23

The statutory offense of official misconduct that was subsequently codified at N.J.S.A. 2C:30-2 provides:

> A public servant is guilty of official misconduct when, with purpose to obtain a benefit for []self or another or to injure or to deprive another of a benefit:
>
> > (a) [The public servant] commits an act relating to his [or her] office but constituting an unauthorized exercise of his [or her] official functions, knowing that such act is unauthorized or he [or she] is committing such an act in an unauthorized manner; or
> >
> > (b) [The public servant] knowingly refrains from performing a duty which is imposed upon him [or her] by law or is clearly inherent in the nature of his [or her] office.

Our courts have interpreted the statute to require an act that "somehow relate[s] to the wrongdoer's public office," State v. Kueny, 411 N.J. Super. 392, 407 (App. Div. 2010), "regardless of whether the [wrongdoer] committed the offense on the job premises or during work hours," Hinds, 143 N.J. at 546 (quoting Moore v. Youth Corr. Inst., 119 N.J. 256, 269 (1990)). "That standard distinguishes between conduct that relates to the public servant's office and a public servant's purely private misconduct." State v. Saavedra, 222 N.J. 39, 60 (2015); see also Hinds, 143 N.J. at 549 (noting "not every offense committed by a public official involves official misconduct").

10

In <u>State v. Weleck</u>, 10 N.J. 355, 365 (1952), the Court distinguished "private misconduct" from "misconduct in office" as follows:

> "By 'misconduct in office,' or 'official misconduct,' is not meant misconduct, criminal or otherwise, which is committed by a person who happens to be a public officer, but which is not connected with his [or her] official duties. Such conduct is sometimes called private misconduct to distinguish it from official misconduct. . . .
>
> 'Misconduct in office,' or 'official misconduct,' means, therefore, any unlawful behavior in relation to official duties by an officer [e]ntrusted in any way with the administration of law and justice, or, as otherwise defined, any act or omission in breach of a duty of public concern, by one who has accepted public office."
>
> [(Omission in original) (quoting 1 William Livesey Burdick, <u>Law of Crime</u> § 272, at 387 (1946)).]

In <u>Karins</u>, the Court explained that "misconduct" is akin to conduct unbecoming a public employee, 152 N.J. at 554, which is broadly defined as "any conduct which adversely affects the morale or efficiency" of the governmental unit or "which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services," <u>In re Emmons</u>, 63 N.J. Super. 136, 140 (App. Div. 1960) (quoting <u>In re Zeber</u>, 156 A.2d 821, 825 (Pa. 1959)). The conduct need not be "predicated upon the violation of any particular rule or regulation, but may be based merely upon the

11

violation of the implicit standard of good behavior which devolves upon one who stands in the public eye . . . ." In re Emmons, 63 N.J. Super. at 140.

In Karins, an off-duty firefighter was the subject of disciplinary action for "conduct unbecoming a public employee." 152 N.J. at 552-53. Karins "direct[ed] a racial epithet at an on-duty police officer." Id. at 536. "To make matters worse, he identified himself as an [Atlantic City Fire Department] employee prior to conducting himself in such a manner" and "exhibited this behavior in public, toward other City employees." Id. at 556.

The Court expounded that "[c]onduct unbecoming a firefighter or other public employee . . . is reminiscent of the common-law offense of misconduct in office and the statutory offense of official misconduct, N.J.S.A. 2C:30-2." Id. at 553. In upholding the disciplinary action, the Karins Court stressed that the use of a racial epithet by a fireman against a police officer who was in the course of performing his duties without regard to who may have witnessed the conduct "adversely affects the morale of both the police and fire departments" and "has the tendency to destroy public respect for City employees and public confidence in the operation of the respective departments." Id. at 556-57.

Elected or appointed public officials "are public officers holding positions of public trust. They stand in a fiduciary relationship to the people whom they

have been elected or appointed to serve."  Driscoll v. Burlington-Bristol Bridge

Co., 8 N.J. 433, 474 (1952).  As fiduciaries,

> they are under an inescapable obligation to serve the public with the highest fidelity.  In discharging the duties of their office[,] they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity.
>
> [Id. at 474-75.]

Police officers must adhere to higher standards than other public officials.

> [A] police officer is a special kind of public employee[ whose] primary duty is to enforce and uphold the law.  [The officer] carries a service revolver . . . and is constantly called upon to exercise tact, restraint and good judgment in his [or her] relationship with the public.  [The officer] represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public, particularly in a small community . . . .
>
> [In re Disciplinary Procs. of Phillips, 117 N.J. 567, 576-77 (1990) (first alteration and second omission in original) (quoting Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965)).]

As such, a police officer cannot "complain that he or she is being held to an

unfairly high standard of conduct," id. at 577, and can be removed from office

for "misconduct," N.J.S.A. 40A:14-147, not specifically misconduct in office.

13

Plaintiff's conduct did not subject him to criminal prosecution for official misconduct under N.J.S.A. 2C:30-2, nor was he the subject of civil proceedings for "conduct unbecoming a public employee." Instead, N.J.S.A. 40:14A-5(c), which governs plaintiff's removal, specifies "misconduct in office." The rules of statutory construction "start with the plain language of the statute, which is typically the best indicator of [the Legislature's] intent." In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 467 (2013). If based upon a plain reading the statutory language is "'clear and unambiguous,' courts will implement the statute as written without resort to judicial interpretation, rules of construction, or extrinsic matters." Bergen Com. Bank v. Sisler, 157 N.J. 188, 202 (1999) (quoting In re Est. of Post, 282 N.J. Super. 59, 72 (App. Div. 1995)).

"Courts may not rewrite a plainly written law or presume that the Legislature intended something other than what it expressed in plain words." In re Plan, 214 N.J. at 468 (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "Thus, the literal words of a statute, if clear, mark the starting and ending point of the analysis." Ibid. "It is only when there is ambiguity in the language that we turn to extrinsic evidence, such as legislative history." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016).

A-1438-23

Guided by these principles, we agree with the motion judge that "misconduct in office" as proscribed by N.J.S.A. 40:14A-5(c) must touch upon or relate to plaintiff's public office. Here, there is no evidence linking plaintiff's misconduct to his office. Plaintiff claimed he intended to send the pornographic video to one person but inadvertently sent it to the entire Facebook group. Indeed, the Facebook group was not part of plaintiff's office or employment, nor is there any indication that his membership in the group was even related to his position as commissioner. Because the act constituted private misconduct, and did not directly or indirectly involve plaintiff's public office, it cannot be deemed "misconduct in office" and cannot form the basis for his removal from office under N.J.S.A. 40:14A-5(c).

Accordingly, we agree with the judge that plaintiff's removal was unlawful. Because plaintiff was removed for a reason not contemplated by the statute, defendant's action was arbitrary, capricious, and unreasonable. As a result, plaintiff was entitled to summary judgment. Based on our decision, we vacate the stay previously imposed and remand for further proceedings.

Affirmed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hawley

Clerk of the Appellate Division

15

A-1438-23